**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
CIC LTD., LAGOS; XL INSURANCE SE; ACTIVA ASSURANCES; AMSA ASSURANCES, IVORY COAST; AIG EUROPE LIMITED; BALOISE BELGIUM NV/SA; ALLIANZ ESA CARGO & LOGISTICS GMBH; AXA BELGIUM SA/NV; GENERALI SCHADEVERZEKERING MAATSCHAPPIJ N.V.; SWISS RE INTERNATIONAL SE; AXA VERSICHERUNG AG; GENERALI IARD; AMSA ASSURANCES SENEGAL; LLOYD'S SYNDICATE 4444; LLOYD'S SYNDICATE 0033; LLOYD'S SYNDICATE 3000; LLOYD'S SYNDICATE 1969; LLOYD'S SYNDICATE 2232; and LLOYD'S SYNDICATE 5151,

**COMPLAINT**

                Plaintiffs,          20 Civ. ____ (__)

   -against-

MAERSK A/S,

                Defendant.
------------------------------------------------------------------x

Plaintiffs CIC LTD., LAGOS; XL INSURANCE SE; ACTIVA ASSURANCES; AMSA ASSURANCES, IVORY COAST; AIG EUROPE LIMITED; BALOISE BELGIUM NV/SA; ALLIANZ ESA CARGO & LOGISTICS GMBH; AXA BELGIUM SA/NV; GENERALI SCHADEVERZEKERING MAATSCHAPPIJ N.V.; SWISS RE INTERNATIONAL SE; AXA VERSICHERUNG AG; GENERALI IARD; AMSA ASSURANCES SENEGAL; LLOYD'S SYNDICATE 4444; LLOYD'S SYNDICATE 0033; LLOYD'S SYNDICATE 3000; LLOYD'S SYNDICATE 1969; LLOYD'S SYNDICATE 2232; and LLOYD'S SYNDICATE 5151 (collectively "Plaintiffs"), by and through their attorneys, Nicoletti Hornig & Sweeney, as and for their Complaint against Defendant MAERSK A/S, allege upon information and belief as follows:

1

**PARTIES**

1. Plaintiff CIC Ltd., Lagos ("CIC") is a body corporate incorporated under the laws of Nigeria whose place of business is 39 Creek Road, Apapa, Lagos, Nigeria. Plaintiff CIC is the owner of the consignment and the person to whom the delivery was to be made, and is the lawful holder of the bill of lading issued by Defendant Maersk.

2. Plaintiff XL Insurance SE is a body corporate incorporated under the laws of Ireland whose place of business is 8 St. Stephen's Green, Dublin 2, Ireland.

3. Plaintiff Activa Assurances is a body corporate incorporated under the laws of Cameroon whose place of business is Rue Prince de Galles, B.P.: 2970 Douala, Cameroon.

4. Plaintiff AMSA Assurances, Ivory Coast, is a body corporate incorporated under the laws of Ivory Coast whose place of business is 19 Avenue Delafosse, Abidjan, Ivory Coast.

5. Plaintiff AIG Europe Limited is a body corporate incorporated under the laws of France whose place of business is Tour CB21, 16 place de l'Iris, 92 040 Paris La Defense Cedex, France.

6. Plaintiff Baloise Belgium NV/SA is a body corporate incorporated under the laws of Belgium whose place of business is City Link – Posthofbrug 16, 2600 Antwerp, Belgium.

7. Plaintiff Allianz ESA Cargo & Logistics GmbH is a body corporate incorporated under the laws of Germany whose place of business is Kapstadtring 2, 22297 Hamburg, Germany.

8. Plaintiff AXA Belgium SA/NV is a body corporate incorporated under the laws of Belgium whose place of business is Boulevard du Souverain 25, 1170 Watermael-Boitsfort, Belgium.

9. Plaintiff GENERALI Schadeverzekering Maatschappij N.V. is a body corporate incorporated under the laws of the Netherlands whose place of business is Diemerhof 42, 1112 XN Diemen, Netherlands.

10. Plaintiff SWISS RE International SE is a body corporate incorporated under the laws of France whose place of business is 2-4 Rue Pillet-Will, 75 009 Dusseldorf, Germany.

11. Plaintiff AXA Versicherung AG is a body corporate incorporated under the laws of Germany whose place of business is Rolandstrasse 44, 40476 Dusseldorf, Germany.

12. Plaintiff GENERALI IARD is a body corporate incorporated under the laws of France whose place of business is 75 456 Paris Cedex 09, France.

13. Plaintiff AMSA Assurances Senegal is a body corporate incorporated under the laws of France whose place of business is 43 Avenue Hassan II, BP 225 Dakar, Senegal.

14. Plaintiff Lloyd's Syndicate 4444 is a body corporate incorporated under the laws of England and Wales whose place of business is Gallery 9, One Lime Street, London EC3M 7HA, England.

15. Plaintiff Lloyd's Syndicate 0033 is a body corporate incorporated under the laws of England and Wales whose place of business is 1 Great St. Helens, London EC31 6HX, England.

16. Plaintiff Lloyd's Syndicate 3000 is a body corporate incorporated under the laws of England and Wales whose place of business is 20 Fenchurch Street, London EC3M 3AZ, England.

17. Plaintiff Lloyd's Syndicate 1969 is a body corporate incorporated under the laws of England and Wales whose place of business is One Bishopsgate, London EC2N 3AQ, England.

18. Plaintiff Lloyd's Syndicate 2232 is a body corporate incorporated under the laws of England and Wales whose place of business is Allied World Assurance Company Europe, 19th Floor, 20 Fenchurch Street, London EC3M 3BY, England.

19. Plaintiff Lloyd's Syndicate 5151 is a body corporate incorporated under the laws of England and Wales whose place of business is 2 Minister Court, Mincing Lane, London EC3R 7BB, England.

20. The Plaintiffs identified above in paragraphs "2" through "19" (collectively, "Underwriters") are the insurers of the consignment held by CIC and claim as assignees by operation of law the rights CIC.

21. Defendant MAERSK A/S ("Maersk") (formerly known as Maersk Line A/S) is a body corporate incorporated under the laws of Denmark whose place of business is 50 Esplanaden, DK-1098, Copenhagen K, Denmark.

## JURISDICTION

22. This Court has jurisdiction pursuant to Clause 26 of the Maersk Terms for Carriage, which provides that "[f]or shipments to or from the U.S. any dispute relating to this bill of lading shall be governed by U.S. law and the United States Federal Court of the Southern District of New York is to have exclusive jurisdiction to hear all disputes in respect thereof."

23. The citizenship of the parties is as follows:

    a. Plaintiff CIC is a body corporate incorporated under the laws of Nigeria.

    b. Plaintiff XL Insurance SE is a body corporate incorporated under the laws of Ireland.

    c. Plaintiff Activa Assurances is a body corporate incorporated under the laws of Cameroon.

    d. Plaintiff AMSA Assurances, Ivory Coast is a body corporate incorporated under the laws of Ivory Coast.

    e. Plaintiffs AIG Europe Limited, SWISS RE International SE, and GENERALI IARD are bodies corporate incorporated under the laws of France.

    f. Plaintiffs Baloise Belgium NV/SA and AXA Belgium SA/NA are bodies corporate incorporated under the laws of Belgium.

    g. Plaintiffs Allianz ESA Cargo & Logistics GmbH and AXA Versicherung AG are bodies corporate incorporated under the laws of Germany.

    h. Plaintiff GENERALI Schadeverzekering Maatschappij N.V. is a body corporate incorporated under the laws of the Netherlands.

    i. Plaintiff AMSA Assurances Senegal is a body corporate incorporated under the laws of Senegal.

    j. Plaintiffs Lloyd's Syndicates 4444, 0033, 3000, 1969, 2232, and 5151 are bodies corporate incorporated under the laws of England and Wales.

    k. Defendant Maersk is a body corporate incorporated under the laws of Denmark.

24. This Court has personal jurisdiction over the Defendant because Maersk conducts business in the United States and agreed to arrange for transportation or physically transport the subject cargo from the United States.

**AS AND FOR ITS FIRST CAUSE OF ACTION – BREACH OF CONTRACT**

25. On or about August 6, 2019, CIC contracted with Maersk for the transportation of 2462 cartons of frozen Hake, 10kg of fish, in one 40-foot reefer container numbered MNBU-0425267, from Seattle, Washington, USA to Lagos Apapa Seaport in Nigeria.

26. On August 6, 2019, Maersk issued Bill of Lading No. MAEU 969465692. The bill of lading is subject to Maersk's Terms for Carriage, which can be found at https://terms.maersk.com/carriage.

27. The cargo was shipped on board on August 4, 2019.

28. The cargo arrived in Lagos on October 22, 2019, where it was discharged and delivered to CIC at Amuwo Odofin.

29. When Seaguard Inspections Services ("Seaguard"), CIC's local appointed surveyors, opened the cartons for unstuffing, the cartons were noted defrosted with bloodstains and apparent damage.

30. A joint inspection of the cargo was conducted on October 26, 2019 by Mr. Godfrey Akpoyomare, for Africa International Services Nigeria Ltd., Mr. Monday Ogadina, for Seaguard, and Mr. Kunle Olaniyi, for Lighthouse Marine.

31. The joint inspection accepted 862 of the cartons as sound cargo and rejected 1600 of the cartons due to damage, unwholesomeness of the damaged fish, and unfitness for health standard requirements.

32. The joint inspection stated that the defrost damage could be attributed to the inability to maintain the required temperature by the unit's reefer mechanism during the sea passage.

33. The actual loss suffered by CIC for the fish was USD $17,200.00.

34. The 1600 cartons of rejected fish were purchased by Abiola Aduks Nigeria Ltd. in a salvage sale, through which Plaintiffs recovered USD $3,387.62.

35. A survey was conducted by Atlantis International Services, which cost EUR €1.080,00.

36. CIC signed a subrogation form acknowledging receipt of the sum of USD $13,812.38 from various underwriters.

37. Thus, the total loss suffered by CIC and its subrogated underwriters for the damaged cargo is USD $13,812.38 and EUR €1.080,00.

38. Clause 5.1 of the Maersk Terms for Carriage provides that "[w]here the Carriage is Ocean Transport, the Carrier undertakes to perform and/or in his own name to procure performance of the Carriage from the Port of Loading to the Port of Discharge. The liability of the Carrier for loss of or damage to the Goods occurring between the time of acceptance by the Carrier of custody of the Goods at the Port of Loading and the time of the Carrier tendering the Goods for delivery at the Port of Discharge shall be determined in accordance with Articles 1-8 of the Hague Rules save as is otherwise provided in these Terms and Conditions. These articles of the Hague Rules shall apply as a matter of contract."

39. Article 2 of the Hague Rules provides that "under every contract of carriage of goods by sea the carrier, in relation to the loading, handling, stowage, carriage, custody, care and discharge of such goods, shall be subject to the responsibilities and liabilities, and entitled to the rights and immunities hereinafter set forth."

40. Article 3.2 of the Hague Rules provides that "the carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried."

41. Article 3.4 of the Hague Rules provides that the carrier's provision of a bill of lading upon receipt of the goods into his charge "shall be *prima facie* evidence of the receipt by the carrier of the goods as therein described . . . ."

42. The bill of lading issued by Maersk makes no mention of defrosting, blood stains, or damage to the cargo.

43. As a result of Maersk's failure to comply with the bill of lading, Maersk's own Terms for Carriage, and the Hague Rules, Plaintiffs suffered damages of $13,812.38 in connection with the unwholesomeness of the fish cargo upon arrival in Lagos.

44. By reason of the premises, Maersk is liable to Plaintiffs for Plaintiffs' damages in the amount of no less than USD $13,812.38 and EUR €1.080,00.

45. Therefore, Plaintiffs demand judgment against Maersk for all damages incurred in connection with Maersk's breach of contract while transporting the cargo, in the amount of USD $13,812.38 and EUR €1.080,00.

## AS AND FOR ITS SECOND CAUSE OF ACTION - NEGLIGENCE

46. Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1 through 45 hereof as though the same were set forth herein in full and at length.

47. During shipment from Seattle, USA to Lagos, Nigeria and prior to October 22, 2019, Maersk negligently handled the cargo such that it experienced defrosting, bleeding, and damage upon arrival in Lagos.

48. Because of the damage suffered by the cargo during the overseas shipment while in the custody or control of Maersk, 1600 of the total 2462 cartons of fish were rejected in Lagos as unwholesome.

49. As a result of Maersk's negligence, Plaintiffs incurred losses of USD $17,200.00.

50. Because of the damage to the 1600 rejected cartons of fish, they were sold at a salvage sale at a significantly reduced price. Plaintiffs were able to recoup USD $3,387.62 as a result of the salvage sale.

51. Additionally, a survey was conducted by Atlantis International Services, which cost EUR €1.080,00.

52. As a result of Maersk's negligence, Plaintiffs ultimately incurred total losses of USD $13,812.38 and EUR €1.080,00.

53. Therefore, Plaintiffs demand judgment against Maersk for all damages incurred in connection with Maersk's negligence while transporting the cargo, in the amount of USD $13,812.38 and EUR €1.080,00.

**WHEREFORE**, Plaintiffs CIC LTD., LAGOS; XL INSURANCE SE; ACTIVA ASSURANCES; AMSA ASSURANCES, IVORY COAST; AIG EUROPE LIMITED; BALOISE BELGIUM NV/SA; ALLIANZ ESA CARGO & LOGISTICS GMBH; AXA BELGIUM SA/NV; GENERALI SCHADEVERZEKERING MAATSCHAPPIJ N.V.; SWISS RE INTERNATIONAL SE; AXA VERSICHERUNG AG; GENERALI IARD; AMSA ASSURANCES SENEGAL; LLOYD'S SYNDICATE 4444; LLOYD'S SYNDICATE 0033; LLOYD'S SYNDICATE 3000; LLOYD'S SYNDICATE 1969; LLOYD'S SYNDICATE 2232; and LLOYD'S SYNDICATE 5151 respectfully pray for judgment to be entered in its favor and against Defendant MAERSK A/S in the amount of USD $13,812.38 and EUR €1.080,00 plus interest and costs and such relief as the Court deems just and proper.

Dated: New York, New York
       October 20, 2020

                                          NICOLETTI HORNIG & SWEENEY
                                          *Attorneys for Plaintiffs*

                                          By: *[signature]*
                                              Terry L. Stoltz, Esq.
                                              Wall Street Plaza
                                              88 Pine Street, 7th Floor
                                              New York, NY 10005


T: (212) 220-3830  
tstoltz@nicolettihornig.com  
File No.: 0-1347